AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  2:21-mj-608
)
1489 Seeran Place, Columbus, Ohio, 43228 to include )
all outbuildings and curtilage )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Southern__ District of __Ohio__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to Possess with Intent to Distribute Controlled Substance |
| 21 USC 846 | Attempt to Possess with Intent to Distribute Controlled Substance |

The application is based on these facts:
See Affidavit in Support of Anticipatory Search Warrant

☒ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Christopher L. Ellison - DEA Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __Telephone__ *(specify reliable electronic means)*.

Date: 9/23/2021

*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura
United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christopher L. Ellison, being first duly sworn, hereby depose and state as follows:

### I.

### INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Sergeant for the Ohio State Highway Patrol, currently assigned full-time as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. Your Affiant has been employed by the State of Ohio as a "Law Enforcement Officer," as defined in the Ohio Revised Code Section 2901.01, since 2004. Your Affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878 and the Ohio Revised Code.

2. Prior to being assigned to the DEA Task Force, your Affiant was the assistant commander of an inter-agency collaborative between the Ohio State Highway Patrol, Cincinnati Police Department, and DEA – Cincinnati from 2017-2018, the assistant commander of the Ohio State Highway Patrol Wilmington District Criminal Patrol Unit from 2016 – 2017, assigned as a Task Force Officer with the West Central Ohio Crime Task Force in Lima, Ohio from 2014 – 2016, and assigned as a road patrol trooper from 2004 – 2014.

3. During the course of my law enforcement career, I have had experience in debriefing defendants and interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding the trafficking of controlled substances and the amassing, spending, conversion, transportation, and concealment of records and proceeds of trafficking in controlled substances.

### II.

### PURPOSE OF AFFIDAVIT

4. This Affidavit is made in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for an Anticipatory Search Warrant for the following premises:

   The residential property located at **1489 Seeran Place, Columbus, Ohio, 43228 to including all outbuildings and curtilage** (hereinafter referred to as **TARGET PREMISES**). This **TARGET PREMISES** is more fully described in Attachment A incorporated herein by reference.

5. Based upon the information below, I have probable cause to believe that, if the triggering event for the anticipatory search warrant occurs, there will be located within the **TARGET PREMISES**, property that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as a means of committing a criminal offense. Specifically, I have probable cause to believe that within the above-mentioned property there is evidence of violations of Title 21, U.S.C. § 846, Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance (Marijuana) and Attempt to Possess with Intent to Distribute a Controlled Substance. Based on my training and experience, as described above, I believe that there is probable cause to believe that the items listed in Attachment B (incorporated herein by reference) will be found at the **TARGET PREMISES** described in Attachment A.

6. The information contained in this Affidavit is largely based upon investigations conducted by your Affiant and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, only information necessary to establish probable cause that evidence associated with the drug trafficking offenses referenced above is located at/in the **TARGET PREMISES**.

### III.

### FACTS SUPPORTING PROBABLE CAUSE

7. On September 21, 2021, Trooper McCallister of the Missouri State Highway Patrol conducted a traffic stop on Interstate 44 that resulted in the arrest of an occupant of the vehicle, hereinafter referred to as "CD." CD is a cooperating defendant that is facing potential drug trafficking charges arising from the aforementioned traffic stop.

8. Trooper McCallister stopped the vehicle being driven by CD for a speeding violation. During the course of the traffic stop, Trooper McCallister asked CD for consent to search the vehicle. CD granted Trooper McCallister consent to search the vehicle. Trooper McCallister located four cardboard boxes in the rear hatch area of the vehicle. Trooper McCallister opened the boxes and found all four to contain a large amount of marijuana. The marijuana was processed as evidence and confirmed to be 102 gross pounds (46.30 gross kilograms).

9. Sergeant Musche of the Missouri State Highway Patrol conducted a post-Miranda interview of CD. CD stated he/she had picked up the marijuana from a location in Oklahoma City, OK, and was delivering it to ROBERT SPILLMAN at 1489 Seeran Place, Columbus, Ohio (TARGET PREMISES). CD stated he/she has previously made between 10 and 15 deliveries of the same size to SPILLMAN at the same address in Columbus.

10. On September 22, 2021, Sergeant Musche contacted your Affiant in regard to CD's arrest and cooperation. On the same date, Your Affiant and other members of law enforcement contacted CD and were provided additional information about the drug trafficking

organization in which CD was involved. Your Affiant and other members of law enforcement were able to corroborate the information provided by CD.

11. CD stated he/she intended to deliver the seized marijuana to SPILLMAN at his residence, (**TARGET PREMISES**) on September 23, 2021. CD explained what typically happened after the delivery - SPILLMAN will provide approximately $130,000.00 to $160,000.00 in U.S Currency for the marijuana. CD stated he/she would then travel back and deliver the U.S. Currency to a location in Oklahoma City. CD provided an accurate description of **TARGET PREMISES**. CD stated the previously deliveries have all taken place at **TARGET PREMISES** and have occurred in the same fashion. CD stated he/she will arrive at the **TARGET PREMISES** and SPILLMAN will open the gate of a large privacy fence for CD to drive into the property. CD stated he/she and SPILLMAN will then unload the marijuana and take it inside a pole building style detached garage. CD stated he/she has never gone to the **TARGET PREMISES** for any purpose other than to deliver narcotics. CD stated SPILLMAN lives at **TARGET PREMISES** with his wife. CD stated he/she personally knows SPILLMAN to be a marijuana and cocaine trafficker. CD stated SPILLMAN uses a different source of supply for cocaine than for marijuana.

12. CD stated he/she communicates with SPILLMAN using the secured messaging application "Signal." CD stated the Signal account used by SPILLMAN is associated with phone number 614-290-0810. In September 2021, Your Affiant served an administrative subpoena to Sprint for records associated with phone number 614-290-0810. Sprint received the subpoena request and honored it by providing electronic records associated to the account. Your Affiant reviewed the records provided by Sprint and found phone number 614-290-0810 to be subscribed to Penny Spillman with **TARGET PREMISES** listed as the subscriber address.

13. Members of law enforcement conducted surveillance and observed a silver Lincoln leave **TARGET PREMISES**. A records check of the vehicle's registration, Ohio "PENSMKZ," revealed the vehicle to be registered to Robert SPILLMAN, with Penny Spillman as an additional owner, and **TARGET PREMISES** listed as the home address.

14. On the same date, Your Affiant conducted a criminal history check on SPILLMAN and learned he has prior state and federal convictions for drug trafficking and firearms violations.

15. Through my training and experience I am aware that marijuana is a Schedule I controlled substance. As such, law enforcement will remove the marijuana from the packaging and will replace it with a pseudo substance ("sham") prior to attempting to conduct the controlled delivery.

16. On September 23, 2021, Your Affiant will arrange a controlled delivery to mimic the prior typical deliveries - where CD will communicate with SPILLMAN to coordinate the delivery of marijuana (sham) in exchange for U.S. Currency to take place at **TARGET PREMISES**. Upon CD driving inside the gate of the privacy fence at **TARGET PREMISES** to meet with SPILLMAN to conduct the exchange, or SPILLMAN receiving

the marijuana boxes from the vehicle driven by CD, or similar conduct by SPILLMAN that indicates the intent to accept possession of the marijuana box, the search warrant will be executed. The search warrant at the **TARGET PREMISES** will be executed if, and only if, the above conditions are met.

### IV.

### COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

17. Based on my training, education, and experience, as well as training, education and experience of other law enforcement officers, I know:

    a. That drug traffickers often amass significant assets from their illegal drug trafficking activities.

    b. That drugs traffickers often maintain large amounts of U.S. currency derived from illegal activities. It is common for individuals to secret contraband and conceal proceeds of drug sales and records of drug transactions in secure locations such as personal residences or businesses where they have ready access and control. Often, these locations are used to conceal the existence of substantial wealth from law enforcement authorities.

    c. That drug traffickers also attempt to legitimize their profits by converting it into other assets, such as stocks, bonds, precious metals, jewelry, real estate, vehicles and other assets. To accomplish these goals, these individuals utilize false and fictitious business records, nominee purchasers, foreign and domestic banks, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate shell corporations and business fronts. These individuals conceal, in their residences, businesses, safes, safe deposit boxes, storage units and vehicles, currency, cashier's checks, money orders and other negotiable instruments, as well as the records relating to the acquisition, conversion, movement, transfer, and disbursement of these funds and assets. Additionally, the drug traffickers themselves usually control access to these areas. Further, it is not uncommon for narcotics traffickers to "legitimize" their funds through casinos, documenting their "winnings" in an attempt to show an additional source of income.

    d. That drug smugglers are not unlike other members of society in that they rely on credit and debit cards to make financial payments. Records relating to the use of these cards can provide valuable information to the investigation by establishing, among other things, the amount of money that is being spent by the suspects, their travel patterns (e.g., using a credit card to pay for gasoline on a cross-country trip), and may further identify businesses which are associated with the illegal activities of the suspects.

    e. That drug traffickers deal in currency and store currency in conveyances, homes and at business sites. Furthermore, the Currency Transaction Report (CTR) (IRS

Form 4789) is required to be completed and filed with the Internal Revenue Service by all financial institutions on every currency transaction that exceeds $10,000. This requirement causes tremendous problems for drug traffickers when they attempt to negotiate their illegal profits at financial institutions because these reports can be made available to law enforcement officials. It is quite common for individuals who deal in illegal controlled substances to convert drug proceeds (currency) into cashier's checks and or money orders in amounts less than $10,000 at numerous financial institutions over the course of several days in order to avoid the CTR filing requirement. Furthermore, drug traffickers often recruit other individuals to convert drug proceed currency for them in order to avoid handling the currency themselves.

f. That drug traffickers use financial habits designed to minimize and hide a paper trail. Traffickers often purchase and/or title their assets in fictitious names, aliases, or in the names of relatives, friends, associates or business entities to avoid detection of these assets by government agencies, especially the Internal Revenue Service. Regardless of documented ownership, the drug traffickers continue to use these assets and exercise control over them.

g. That drug traffickers maintain books, records, receipts, notes, ledgers, bank records, accounting records and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of controlled substances. These ledgers often contain amounts of drugs; accounting of payments made and received, accounts receivable and accounts payable used in furtherance of their drug trafficking activities. These individuals commonly "front" (provide illegal controlled substances on consignment) illegal controlled substances to their clients and thus keep some type of record concerning moneys owed. Drug traffickers often maintain phone books, address books and other papers containing names, telephone numbers, and addresses of suppliers and purchasers of controlled substances. The names and numbers are often written in a code that requires drug traffickers to keep a key to their particular code.

h. The aforementioned books, records, receipts, notes, ledgers, codes, etc., are usually maintained in a secure location where dealers in illegal controlled substances have ready access to them such as on their person, vehicle, business, safe deposit box, home safe, personal or business computer, storage facility or in other residences or businesses where they periodically reside or have access and control.

i. It is not uncommon for individuals who deal in illegal controlled substances to take, or cause to be taken, photographs of themselves, their associates, their property and their illegal product. These individuals usually maintain these photographs in their possession or in residences where they reside or have access and control.

j. That drug traffickers commonly use cellular telephones to coordinate various narcotics trafficking activities. Other traffickers, in order to avoid speaking on

        telephones, use numeric codes on electronic devices to communicate with co-conspirators.

k. That drug traffickers often engage in domestic and/or international travel in relation to the smuggling of illegal contraband. Analysis of travel records and documents can assist in the development of the investigation by revealing potential source and/or destination locations related to the distribution of illegal narcotics or the payment of related proceeds.

l. Persons who traffic in controlled substances are not unlike any other individual in our society in that they maintain documents and records. These documents and records will normally be retained for long periods regardless of whether their value to the individual has diminished. Often times, this type of evidence is generated, maintained and subsequently forgotten about. Hence, documents that one would normally think a prudent person would destroy because of their incriminating nature are still possessed months or even years after they come into the possession of a drug trafficker. Often times these individuals do not even realize the incriminating nature of the documents they keep.

## V.

## CONCLUSION

18. Based upon the details as outlined above, I believe, based on the facts set forth in the Affidavit, your Affiant believes there is probable cause to believe that if the box containing marijuana (sham) is delivered and the above triggering condition is met, that evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime and associated with the above listed drug trafficking offenses exists and can be found inside the **TARGET PREMISES**. WHEREFORE, based on the foregoing evidence of drug trafficking, I respectfully request that the Court issue a search warrant and sealing order for the premises described in Attachment A and the property described in Attachment B. Investigators request that this warrant be SEALED.

Christopher L. Ellison
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
this __23__ of September, 2021

## ATTACHMENT OF CONDITIONS

Upon CD driving inside the gate of the privacy fence at **TARGET PREMISES** to meet with SPILLMAN to conduct the exchange, or SPILLMAN receiving the marijuana boxes from the vehicle driven by CD, or similar conduct by SPILLMAN that indicates the intent to accept possession of the marijuana box, the search warrant will be executed. The search warrant at the **TARGET PREMISES** will be executed if, and only if, the above conditions are met.

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

**TARGET PREMISES 1: 1489 Seeran Place, Columbus, Franklin County, Ohio including all outbuildings and curtilage** is described as a single family, single-story home with attached garage. The front of the structure if further described as having a gray fascia with brick on the lower portion of the residence. The front door is described brown with an oval shaped window. The numbers "1489" are clearly marked on the mailbox, located directly in front of the residence. The property is enclosed by a wooden privacy fence. A pole building style detached garage is located on the property, inside the wooden privacy fenced area.

## **ATTACHMENT B**

## **DESCRIPTION OF ITEMS TO BE SEIZED**

The evidence to be searched for and seized is:

- A. Marijuana, cocaine, and any other controlled substances;

- B. Documents and other items tending to show dominion and control over the premises/vehicle, including, but not limited to, bills or other business-related documents, correspondence, photographs;

- C. Documents or other items tending to identify co-conspirators and sources, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, or lists of names;

- D. Items commonly used to facilitate drug trafficking, including but not limited to items such as firearms, ammunition, cellular telephones, pay/owe sheets, packaging materials, "cut", scales, and grinders;

- E. Likely proceeds of drug trafficking, such as United States Currency and other negotiable instruments; and

- F. Documents and other items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.